**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**COVINGTON DIVISION**
*ELECTRONICALLY FILED*
**CASE NO. _____**

**HEATHER BRESSLER,**
**Individually and as Administrator of**
**the Estate of GARY BRESSLER, deceased;**                    **PLAINTIFF**

**And**

**HEATHER BRESSLER, Custodian and Legal**
**Guardian of A.B., minor female child of**
**Gary Bressler, and V.B. and A.B. minor male**
**Children of Gary Bressler**                                 **PLAINTIFF**

**VS.**

**ZACHARY LUSK, Individually**                               **DEFENDANT**
Serve: Zachary Lusk
     Kentucky State Police Post 6
     4265 Dixie Highway
     Dry Ridge, Kentucky 41045

**And**

**DOULAS HOLT, Individually**                                **DEFENDANT**
Serve: Douglas Holt
     Kentucky State Police Post 6
     4265 Dixie Highway
     Dry Ridge, Kentucky 41045

---

## <u>COMPLAINT</u>

Comes now all Plaintiffs as set forth above, by and through counsel, and for their

Complaint against all Defendants state as follows:

1

## PRELIMINARY STATEMENT

Kentucky State Police officers have shot and killed at least 41 people from 2015 through 2020. That represents more fatal shootings than any other law enforcement agency in the state. In fact, Kentucky troopers have killed more people in rural communities than any department nationwide. About a quarter of those killed were not armed with a gun when state police shot them, and a majority were suffering from addiction or mental health problems. The state police investigate their officers' shootings with no outside oversight. No Kentucky trooper was prosecuted for any of the 41 deaths. Kentucky state troopers do not utilize either lapel or dash cam video to record their encounters. *For Kentucky State Police, Lots of Shootings Draw Little Scrutiny*, TheMarshallProject.org, Santo and Dunlop; August 19, 2021. https://www.themarshallproject.org/2021/08/19/where-lots-of-police-shootings-draw-little-scrutiny#.

In the early morning hours of November 4, 2021, 48-year-old Gary Bressler was at his home on 885 Chipman Ridge Rd., Williamstown, Ky. The home is in rural Grant County. Gary was home with his wife, Heather, the three youngest of his six children, ages 14, and twins aged 11, and another of his children. Gary was suffering from depression and normally would just become quiet and retreat into himself. This evening he was drinking Kentucky Tavern whiskey and had a more severe effect. At some point in the evening, he grabbed a decorative Samurai sword from within the house, went into the front yard and phoned 911. According to his family, Bressler never threatened to harm anyone, not them, not the police. He never lifted the sword up to brandish it or threaten with it. Within minutes two state Troopers arrived, parked 50 or 60 feet away from Bressler, took cover behind their cars and told Bressler to drop the sword two times.

2

Bressler continued to hold on to the sword in his right hand and extended it, so the tip of the sword was near the ground.   He did not drop the sword.   Bressler's wife and children were 20 to thirty feet away from Bressler hysterically screaming for him to put the Sword down and for the Troopers, "Don't hurt my dad!!" and "He just needs help".   Within seconds of the second request to put the sword down, both Troopers shot and killed Gary Bressler in front of his family.

The Postmortem examination of Gary Bressler indicated that he was killed by seven entrance-exit wounds and one graze wound.   Consistent with their policy, the state troopers did not have any form of video that captured the event.   Also consistent with their policy, the Kentucky State Police have chosen to investigate their own officers.   The undersigned has requested access to their investigative reports, including the recording of Bressler's 911 call, transcripts or recordings of the interviews with the Troopers involved, site measurements, and other information contained within the report but has been denied same.   As of the date of the filing of the Complaint, it has been more than four months since Gary Bressler was killed and the KSP report has not yet been provided to the Grant County Commonwealth attorney for her review and decision of whether and how to present the case to a Grant County Grand Jury for potential criminal charges upon the officers.

Plaintiffs bring this civil rights and state law action to secure fair compensation and to encourage Defendants and others to refrain from the unnecessary use of deadly force against civilians who pose no threat to them or others.   The family requests that these officers be held accountable for their actions that night and hope that by bringing this lawsuit that KSP will provide video equipment to their officers and use a third-party agency to investigate its Officer involved shootings.

3

## JURISDICTIONAL ALLEGATIONS

1. The entirety of the events set forth in this Complaint took place in Grant County, Kentucky, within the Jurisdictional boundaries of this Court.

2. Jurisdiction over claims arising from Defendants' violation of the Civil Rights Act is conferred upon this Court by 28 U.S.C. §1331, 1343 (3) and (4). Jurisdiction over the state law claims is conferred upon this Court by 28 U.S.C. §1367. Venue is proper in this district pursuant to 29 U.S.C. §1391.

## THE PARTIES

3. The Plaintiffs represent the estate of Gary Bressler.  Heather Bressler was the wife of Gary Bressler when he was killed and is the Administrator of his Estate.   Heather Bressler is also the mother and sole custodian of Gary Bressler's minor children who have asserted claims herein. All Plaintiffs are citizens and residents of Grant County, Kentucky and were so at all relevant times set forth herein.

4. Defendants Zachary Lusk and Douglas Holt are, and were at all relevant times herein, Police Officers employed by the Kentucky State Police.

## FACTUAL ALLEGATIONS

5. The Plaintiffs hereby reaffirm, reiterate, and incorporate by reference each and every allegation contained within paragraphs 1 through 4 as if fully recited herein and further state as follows:

6. On the early evening of November 2, 2021, things went on normally at the Bressler home.  The two 11 year-old twin boys were playing video games while their fourteen year old sister was on her phone.   Twenty-six year old Dillon was also home and Heather and Gary were

4

watching television.

7.   Sometime around 11:00 p.m. the twins went to bed and Heather and Gary began drinking Kentucky Tavern whiskey.   Gary continued to watch television while Heather went into the kitchen to do dishes.   At some point after midnight Gary became bothered by something.

8.   Gary had grown increasingly depressed over the past few months.   He had quit his job on August 3, 2021 and had not worked since. Typically, Gary would deal with his depression quietly, just keeping to himself and shutting down.

9.   That evening, now past midnight and so in the morning of November 3, 2021, Heather heard Gary talking on his cellphone.   He grabbed a decorative Samurai sword from their bedroom and walked out into the yard.

10.   Heather was obviously surprised and upset that Gary was standing in their yard with the sword.   He was not threatening anyone verbally nor with the sword.   He was holding it with his arm extended and the tip of the sword an inch or so from the ground.

11.   From the time Heather observed this through the rest of Gary's life, Gary never brandished or threatened anyone with the sword, nor did he verbally make any threats.

12.   Heather began begging Gary to come in the house, but he wouldn't.   Gary tossed his cell phone to Heather and Heather began speaking to the 911 Operator. The twin boys and their sister came outside to try to convince their father to come back in the house.

13.   Within minutes of Heather taking the phone, a Grant County officer appeared on the scene.   It is unclear who this officer was and/or what role he played during that evening, but the Bressler's believe it was Officer Tyler Robinson.

5

14.   It is also unclear whether Officer Robinson had a video camera working during this tragedy.   Of course, if it exists, Plaintiffs request that it be preserved.

15.   Shortly after the Grant County officers arrived at the scene, Kentucky State Police Troopers, Zachary Lusk and Douglas Holt arrived at the scene in separate cars.   The troopers parked their cars at a forty-five-degree angle blocking the small country road.   Each trooper exited their cars, one trooper opened his driver side door and crouched behind it.   The other trooper crouched behind his passenger side door.

16.   Troopers Lusk and Holt, crouched behind their doors, yelled at Gary Bressler to drop the sword.

17.   Bressler, approximately 60 feet away from the Troopers, said and did nothing.   The sword was still at arm's length pointed toward the ground.   Bressler did not drop the sword, make any statement or any threatening movement.

18.   Either Lusk or Holt again yelled for Bressler to drop the sword.   Bressler did not.

19.   At about the same time, the twin boys yelled, "Don't hurt our dad" and their fourteen-year-old sister yelled, "He just needs help".

20.   Either Lusk or Holt then yelled at Heather, "Get those kids in the house!" and Either Lusk or Holt then pivoted and pointed his loaded gun at Heather and the three children, placing all four of them in reasonable apprehension and fear for their safety.

21.   Within seconds of the yelling, either Lusk, Holt, or both fired their weapons multiple times, hitting Gary Bressler in front of his family.

22.   Gary Bressler was seriously injured from being struck by the bullets.   He went down in considerable pain, trying to breathe.   He died while Heather was trying to administer First Aid.

6

23.   When Gary Bressler was shot he was in or near his yard and was approximately 60 feet from the officers and 20-25 feet from his family.   He had said nothing threatening to anyone and had not brandished or raised his sword in a threatening manner to anyone.   The officers were behind the doors of their cruisers when they fired the weapons.   There existed no reasonable basis to believe Gary Bressler was an imminent threat to anyone.

24.   No reasonable officer could have thought that shooting multiple shots at Gary Bressler when he was approximately 60 feet away from them and not threatening anyone was lawful.

25.   Defendants Lusk's and Holt's actions were so willful, wanton, malicious and in utter disregard for Gary Bressler's rights as to warrant the imposition of punitive damages.

26.   It is clearly established within the 6th Circuit that it constitutes excessive force to shoot and kill a person who poses no imminent threat of bodily harm to the officers or others.

27.   It is clearly established within the 6th Circuit that it constitutes excessive force to point a loaded gun at an innocent family members trying to help save their father.

28.   As a direct and proximate result of Defendant Lusk's and Holt's unlawful conduct, Gary Bressler was deprived of his enjoyment of life, endured physical pain and suffering, and suffered the destruction of his power to labor and earn money. Further, Plaintiff Heather Bressler and minor children Plaintiffs A.B., A.B., and V.B. lost the love and companionship of a father and husband and were placed in fear for their lives due to either Lusk or Holt pointing a loaded gun at them.

### **FIRST CLAIM FOR RELIEF - 42 U.S.C. §1983**

29.   Plaintiffs incorporate all allegations and statements made in the proceeding paragraphs as if fully restated herein.

7

30.   Defendants Lusk and Holt, under the color of law, deprived Gary Bressler of rights, privileges, and immunities secured to them by the Fourth and Fourteenth Amendments to the United States Constitution including the right to be free of excessive force.

31.   Defendants Lusk and Holt, under the color of law, deprived Heather Bressler and her minor children A.B., V.B., and A.B. of rights, privileges, and immunities secured to them by the Fourth and Fourteenth Amendments to the United States Constitution including the right to be free of excessive force and not have a loaded gun pointed at them.

32.   As a direct and proximate result of Defendants' violation and/or deprivation of Plaintiff's constitutional rights, Plaintiffs have a viable claim for compensatory and punitive damages pursuant to 42 U.S.C. §1983 together with costs, interest and attorney fees.

## SECOND CAUSE OF ACTION – ASSAULT AND BATTERY

33.   Plaintiffs incorporate all the allegations and statements made in the proceeding paragraphs as if fully restated herein.

34.   Defendants intentionally, maliciously, and in bad faith applied and threatened to apply unlawful and unnecessary force against Gary Bressler.

35.   Said physical contact was unnecessary and excessive, and the physical contact was without cause or any legal justification.

36.   As a direct and proximate result of the assault and battery inflicted upon Gary Bressler by the Defendants, Bressler sustained injuries and damages including punitive damages.

## THIRD CAUSE OF ACTION – WRONGFUL DEATH AND SURVIVAL ACTION

37.   Plaintiffs incorporate all allegations and statements made in the proceeding paragraphs as if fully restated herein.

8

38. Defendants Lusk and Holt caused the wrongful death of Kenneth Huntzinger resulting in damages recoverable under KRS 411.130 and KRS 411.133.

39. Plaintiff's damages include the deceased's physical and mental injuries, pain and suffering, as well as the medical and other final expenses incurred as a result of Defendants' actions.

## FOURTH CAUSE OF ACTION – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

40. Plaintiffs incorporate by reference each paragraph of this Complaint as though fully set forth herein.

41. Defendants inflicted severe emotional distress upon Plaintiffs Heather Bressler, A.B., V.B., and A.B., minor children of the deceased, and Heather Bressler.

42. Defendants acted intentionally or recklessly when they committed the acts enumerated above.

43. The Defendants' conduct was so outrageous and intolerable that it offends the generally accepted standards of decency and morality.

44. The Defendants' conduct was a substantial factor in causing Plaintiffs' extreme and severe emotional distress, including Punitive Damages.

## FIFTH CAUSE OF ACTION – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

45. Plaintiffs incorporate by reference each paragraph of this Complaint as though fully set forth herein.

46. Defendants negligently inflicted severe emotional distress on Plaintiffs Heather Bressler, A.B., V.B., and A.B., minor children of the deceased.

47. The Defendants' conduct was a substantial factor in causing Plaintiffs' extreme and severe emotional distress.

## PRAYER FOR RELIEF

**WHEREFORE,** the Plaintiffs demand as follows:

1. That, prior to consideration by the Court of any dispositive motion, the Court permit discovery herein as to information solely within the control of the Defendants so Plaintiffs will have a full and fair opportunity to present their case;

2. A judgment, jointly and severally, against all Defendants on each cause of action in a fair and reasonable amount for compensatory damages;

3. A trial by jury;

4. For an award of Punitive damages;

5. For an award of all Attorney Fees under both State and Federal Law for violations of the Plaintiffs' civil rights;

6. Pre and Post judgment interest;

7. Court costs and expenses of this action; and

8. Any and all other relief or damages applicable to the facts of this matter or that the Court deems fitting and proper.

Respectfully submitted,

*s/s Paul J. Hill*
Paul J. Hill, Esq.
KBA # 84563
2216 Dixie Highway, Suite 203
Ft. Mitchell, KY   41017
(859) 491-8889
paulhillnkyattorney@gmail.com

10